IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| SUSAN PUNSKY-PINARD, | CIVIL ACTION NO.: |
| Plaintiff, |  |
| v. |  |
| AETNA LIFE INSURANCE COMPANY, |  |
| Defendant. |  |

## COMPLAINT (CIVIL ACTION)

Plaintiff Susan Punsky-Pinard ("Plaintiff" or "Punsky-Pinard") alleges as follows:

### JURISDICTION

1.      Plaintiff's claim for relief arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1132(a)(1).  Pursuant to 29 U.S.C. §1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America.  29 U.S.C. §1132(e)(1) provides for federal district court jurisdiction of this action.

### VENUE

2.      Venue is proper in the District of New Hampshire because Plaintiff, Punsky-Pinard, at certain times alleged herein was at first a resident of the Town of Pembroke, County of Merrimack, and is now a resident of City of Manchester, County of Hillborough, State of New Hampshire.  Therefore, 29 U.S.C. § 1132(e)(2) provides for venue in this court.

**PARTIES**

3.      Plaintiff  is, and at all times relevant hereto was, a participant, as that term is

defined by 29 U.S.C. § 1000(7), of the Allergan, Inc. Group Long Term Disability Plan  ("The

Plan") and thereby entitled to receive benefits therefrom.  Plaintiff was a beneficiary because she

was an employee of Allergan, Inc., which established The Plan.

4.      Defendant Aetna Life Insurance Company, ("Aetna"),  issued Group Accident and

Health Insurance Policy No. 476769 to Allergan, Inc. ("The Policy") under which long term

disability ("LTD") benefits are provided, was insurer and decision maker for The Plan, and is

legally liable for paying the benefits sought herein.

> A.      The Policy was issued on October 1, 2010.
>
> B.      The Policy was delivered in California and provides that it "will be
> construed in line with the law of the jurisdiction in which it is delivered."
>
> C.      The Policy includes a rider entitled "CA Settlement Agreement LTD
> Rider" with an issue date of October 1, 2010, which amends various
> provisions of The Policy, including the "Test of Disability."
>
> D.      The Policy provides the first policy year "starts on October 1, 2010 and
> ends on September 30, 2011."
>
> E.      The Policy provides "This policy shall be deemed to be automatically
> amended to conform with the provisions of applicable laws and
> regulations."

///

///

///

COMPLAINT

## CLAIM FOR RELIEF

5.      The Policy provides LTD benefits, which, for a person under the age of 62 at the time the disability occurred, as was Plaintiff herein, after an elimination period of 120 days, such benefits potentially could continue until the claimant reached the 1983 Amended Social Security Normal Retirement Age, which, for Plaintiff, is age 67.

6.      In order to be eligible for benefits under the Policy, an employee must meet the Policy's definition of disability.

7.      The Policy has the following pertinent definitions,

A.      "Disability" is defined as follows:

"From the date you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed totally disabled on any day, if as a result of disease or **injury**, you are unable to perform with reasonably continuity the **substantial and material acts** necessary to pursue your **own occupation** and you are not working in your **own occupation**.

After 24 months that any Monthly Benefit is payable and during a period of disability, you will deemed to be totally disabled on any day if, as a result of disease or **injury**, you are not able to engage with reasonable continuity in any occupation in which you could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity that exists within any of the following locations.

*       a reasonable distance or travel time form your residence in light of the commuting practices of your community; or
*       a distance or trave time equivalent to the distance or travel time you traveled before becoming disabled; or
*       the regional labor market, if you reside or resided prior to becoming disabled in a metropolitan area."

B.      "Own Occupation" is defined as:

"Any employment, business, trade or profession and the **substantial and material acts** of the occupation you were

regularly performing for your employer when your period of disability began.  **Own occupation** is not necessarily limited to the specific job you performed for your employer."

C.      "Substantial and Material Acts" is defined as:

"The important tasks, functions and operations generally required by employers from those engaged in your **own occupation** and cannot be reasonably omitted or modified.

In determining what 'substantial and material acts' are necessary to pursue your **own occupation**, we will first look at the specific duties required by your employer.  If you are unable to perform one or more of these duties with reasonable continuity, we will then determine whether those duties are customarily required of other employees engaged in your **own occupation**.  If any specific, material duties required of you by your employer differ from the material duties customarily required of other employees engaged in your **own occupation**, then we ill not consider those duties in determining what 'substantial and material acts' are necessary to pursue your **own occupation**."

8.      The Policy explicitly adopts well-established legal standards under

California law and thus under The Policy  total disability as contained in a general disability

clause is that which prevents the insured from engaging in her own or any occupation or

performing any work for compensation and which prevents her from working with reasonable

continuity in her customary occupation or in any other occupation in which she might reasonably

be expected to engage in view of her station and physical and mental capacity.  Therefore,

California law requires an insurance company to consider: (A) whether the claimant could

reasonably be expected to work; recognizing that the fact that the insured may do some work or

even the fact that she may be physically able to do so is not conclusive evidence that her

disability is not total, if reasonable care and prudence require that she desist; (B) given the

claimant's physical and/or mental capacity; (C) and her station in life; (D) to perform the

"substantial and material" duties of her own occupation or any occupation; (E) with "reasonable

continuity;" and (F) in the usual and customary way.

9.     Here, Aetna failed and refused to:

A.     utilize the proper standard of totally disabled in its communications with Plaintiff.

B.     utilize the proper standard of totally disabled in its evaluation of Plaintiff's claim for benefits.

C.     provide its medical or vocational evaluators with the proper criteria to evaluate whether Plaintiff is and was totally disabled.

D.     Therefore, every evaluation and conclusion Aetna reached terminating Plaintiff's LTD benefits and denying her appeal of that termination was arbitrary and capricious.

10.     Punsky-Pinard was formerly employed as a pharmaceutical representative.  She became disabled on January 31, 2013, from co-morbid conditions, including but not limited to, transverse myelitis, inflammatory rheumatoid arthritis, syringomyelia, imbalance, numbness to the legs and arms, fatigue, and chronic pain.

11.     Punsky-Pinard timely applied for and, by letter dated July 19, 2013, was granted LTD benefits by Aetna effective June 4, 2013, after the 120 day elimination period set forth in The Policy.

12.     On December 13, 2013, Dr. George B. Neal performed an independent medical examination ("IME") on Punsky-Pinard at the request of Aetna.  He opined that she could only work four hours per day.

13.     On April 29, 2014, the Social Security Administration ("SSA") deemed Plaintiff disabled on January 31, 2013.  This determination was made on initial application, based on the

COMPLAINT

diagnoses of transverse myelitis, rheumatoid arthritis and other inflammatory polyarthropathies.

14.     By letter dated May 21, 2014, Aetna notified Punsky-Pinard that due to her receipt of SSDI benefits, her LTD benefits would be reduced dollar-for-dollar by the amount she received from the SSA, reducing her LTD benefit by $2,186 per month.  Aetna also demanded repayment of $19,504, which is the overpayment created by Plaintiff's receipt of SSDI benefits. Punsky-Pinard repaid the $19,504, as requested.

15.     On May 11, 2015, Dr. Randall King performed a file review of Punsky-Pinard on behalf of Aetna.  He opined that she could work 40 hours per week, eight hours per day at a sedentary to light level occupation.  Dr. King reported that he spent eight hours on Plaintiff's file, and submitted the report on Aetna letterhead.

16.     By report dated May 11, 2015, Dr. Garson Caruso, on behalf of Aetna, performed a file review of Punsky-Pinard's records, concluding that she could work in a sedentary to light duty job eight hours a day.  Dr. Caruso reported that he spent 8.5 hours on his file review and submitted his report on Aetna letterhead.

17.     By letter dated June 22, 2015, Aetna terminated Plaintiff's LTD benefits, relying upon, in significant part, the reports of Drs. King and Caruso.  The letter invited Punsky-Pinard to appeal.

18.     By letter dated January 4, 2016, Punsky-Pinard, through counsel, appealed the termination of her LTD benefits.  In her appeal, Plaintiff:

        A.     Submitted her SSA award explanation that took arthritis related fatigue into consideration in awarding her benefits;

        B.     Requested that Aetna pay for an FCE to properly evaluate whether fatigue and other functional limitations render her disabled under the terms of The

Policy.

C.     Pointed out that surveillance would be unable to determine fatigue and

that it was insufficient to determine whether she was limited in her ability

to walk or if her gait was impaired.

D.     Noted that Aetna's reviewing physicians did not take into consideration

that transverse myelitis is often a precursor for multiple sclerosis and did

not give proper consideration to her MRI.

19.     The SSA rationale submitted with Punsky-Pinard's appeal states,

"Claimant developed cervical myelitis while on Enbrel & MTX for
infl[ammatory] arthritis about 4-11.  Fatigue became a daily
problem with sense of [lower extremity] heaviness & numbness
[lower extremities and upper extremities].  MRI showed C4/5
sig[nificant] disease leading to C4/5 fusion on 7-15-11 but without
sig[nificant] improvement on fatigue, paresthesia & abnormal
clinical findings which have not changed appreciably in past year.
She has been fully examined by several neurologists.  MRI shows
nonenhancing C 4/5 cord lesion.  EMG & [nerve conduction] 10-
13 [upper extremities & lower extremities] normal.  Widebased,
stiff, spastic gait.  Relatively mildly reduced vib[ration] [left upper
extremity] – she is [right] handed.  Moderate vib[ration] reduced
big toes.  Reduced [pin prick] below knees.  Increase knee [deep
tendon reflexes]s: no clonus.  Proprioception intact all."

20.     In support of her appeal, Punsky-Pinard submitted a February 9, 2016, letter from

her neurologist, Dr. Ann Cabot.  Dr. Cabot wrote:

"I have been working with this patient who has a complex medical
history for a number of years.  She carries a diagnosis of
rheumatoid arthritis, and experienced an episode of transverse
myelitis which was profound in its nature and left the patient with
significant deficits.  She has significant limitations regarding
fatigue, pain, spasticity, bladder symptoms, imbalance, and
endurance.  I had recommended previously that she have a
functional capacity exam.  I am not in the position to render any
opinion regarding what limitations if any she might have regarding

COMPLAINT

her work capacity.  It is my job to help the patient improve to the best of her ability.  I can assure you, that she has done everything we have requested of her, as far as tests, medication trials, and more with regard to diet, exercise, physical therapy, followup with a multitude of other medical providers, etc.  It is not part of my practice to make disability determinations which is why I recommended an FCE, so there should be no adverse weight given to my silence on this issue.  There has been no improvement in her transverse myelitis and degenerative cervical spine disease.  Her ongoing autoimmune process including rheumatoid arthritis likely contributes to her symptomatic fatigue."

21.    In response to that appeal, Aetna obtained a review of Plaintiff's records by Dr.

Kenneth Root.  By report dated March 30, 2016, Dr. Root opined:

"Based upon the documentation provided, which is voluminous and a peer-to-peer discussion with Dr. Ann Cabot, the claimant's attending neurologist; this independent consulting neurologist is of the opinion the claimant does have significant neurological physical, and functional impairment however, it would not be considered total impairment.  She is still ambulatory, able to perform certain daily activities, and is reasonably functional which included driving.  She has a condition of an undetermined demyelinating cervical myolopathy with sequelae, which appears to be nonprogressive.  Her condition at the moment is stable, and there is no indication she will be developing multiple sclerosis in the future or worsening for any reason neurlogically.
Therefore, the claimant has a nonprogressive neurological condition producing some impairment but not totally should be capable of 'any' employment with required restrictions and limitations.  Although this reviewer is not an occupational medicine specialist, from the standpoint of reason based upon the neurologic deficits, the claimant would be suited for a sedentary position which would require her to avoid prolonged standing or walking and should not be working for safety reasons in dangerous or hazardous conditions such as high places, with hazardous chemicals or dangerous equipment.  It would probably also be advisable the claimant not be doing commercial driving.  Sitting appears not to be a problem.
The claimant has been seen by Dr. Cabot in the summer of 2015 and is to follow every 6 to 12 months.  The time frame would be to the present since her condition has not changed.  The claimant should be capable of working eight hours in a sedentary capacity; however, fatigue and sustainability come into question.  This is

COMPLAINT

8

where a Functional Capacity Evaluation would be most helpful and
is recommended by Dr. Cabot and this reviewer concurs.
The prognosis for the condition as mentioned above appears to be
stable and nonprogressive. There is the unlikelihood there would
be worsening or that the claimant would become totally disabled."

22.     Dr. Root's report is not on any letterhead and does not specify how much time he

spent on her file.

23.     By letter dated April 14, 2016, Aetna upheld its decision to terminate Plaintiff's

LTD benefits.

24.     Plaintiff has exhausted all administrative remedies required to be exhausted by

the terms of The Policy and by ERISA.

25.     At all times mentioned herein Plaintiff was, and continues to be, totally disabled

under The Policy's definition of totally disabled and therefore entitled to benefits under the terms

of The Policy.

26.     Defendant is judicially estopped to argue that Plaintiff is not totally disabled

under the terms of The Policy because:

> A.     The Policy specifies that monthly LTD benefits will be reduced by other
> income benefits, including SSA benefits. Aetna required Punsky-Pinard
> to apply for SSDI benefits.
>
> B.     Aetna has the right to reduce Punsky-Pinard's LTD benefits due to her
> receipt of SSDI benefits.
>
> C.     Punsky-Pinard was awarded SSDI benefits after arguing and establishing
> that she was incapable of performing her own or any job in the national
> economy and therefore was entitled to SSDI benefits.
>
> D.     The Social Security Administration necessarily determined that Punsky-

Pinard was incapable of performing not only her own occupation but any occupation in the national economy.  Under the Social Security Act, a person qualifies as disabled and thereby eligible for benefits only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her pervious work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Disability under the Social Security Act means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months . . ."  42 U.S.C. § 423(d)(1)(A).

E.   Aetna was in privity with Plaintiff in the SSA proceedings and therefore, with Aetna, asserted therein that Punsky-Pinard could not perform her own occupation or any occupation in the national economy, considering her age, education, and work experience and prevailed on those arguments.

F.   By virtue of these facts Punsky-Pinard acted in a trustee-like capacity for Aetna in obtaining the proportion of her SSDI awards which reduces her LTD benefits; Aetna and Plaintiff successfully argued to the SSA that she was incapable of performing any occupation in the national economy.

G.   Aetna is therefore judicially estopped to make the opposite argument in this action; that is, to argue that given her age, education and experience

COMPLAINT

Punsky-Pinard is capable of performing any occupation.

27.     Defendant Aetna was required to provide Plaintiff a full and fair review of her claim for benefits pursuant to 29 U.S.C.  §1133 and its implementing Regulations.  Specifically:

A.     29 U.S.C. §1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendant herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

B.     The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133.  These Regulations are set forth in 29 C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans, including Defendant, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

i.     Such procedures comply with the specifications of the Regulations.

ii.     The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan

documents and that, where appropriate, The Policy provisions have been applied consistently with respect to similarly situated claimants.

iii.  Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of The Policy's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under §502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

iv.  Aetna is required to provide a full and fair review of any adverse determination which includes:

a.  That a claimant shall be provided, upon request and free of

charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

b.    A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to The Policy concerning the denied benefit without regard to whether such statement was relied upon in making the benefit determination.

c.    The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

d.    The Regulations further provide that, in deciding an appeal

of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

e.    The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

f.    The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

28.    Defendant Aetna denied Plaintiff a full and fair review of her claim for benefits as follows:

A.    Aetna does not have claims procedures which contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents

and that, where appropriate, The Policy provisions have been applied
consistently with respect to similarly situated claimants, or refused to
provide them to Plaintiff in violation of the Regulations.

    B.    Aetna, when denying Plaintiff's claim for LTD benefits did not provide a
description of the additional material or information necessary for Plaintiff
to perfect her claim or an explanation of why such material or information
was necessary.

    C.    Defendant Aetna failed and refused to provide all relevant documents to
Plaintiff for use in her appeal.

    D.    Defendant Aetna did not consider the comments and documents submitted
in support of Plaintiff's appeal.

    E.    Defendant Aetna otherwise violated the Regulations.

29.    Defendant furthermore withheld portions of Plaintiff's claim file.  Aetna has
failed and refused to provide to Plaintiff:

    A.    Surveillance video footage.  Although there are reports of various periods
of surveillance, no videos were provided.

    B.    Aetna's chronological claim notes, which it maintains for all disability
claims.

    C.    The TSA(s).  None are in the claim file along with the back-up
documentation for the TSAs.

    D.    The templates for the opinions of Drs. Caruso, King, and Root, which
Aetna routinely prepares for such doctors.

    E.    The agreement between Aetna and UDC, which provided Drs. King and

Caruso.

F.    Dr. Root's contract, or if he was obtained through a service, then that service's contract.

G.    The bills for services for the work of Caruso, King, and Root.

H.    The instructions provided either directly or indirectly, to Drs. Caruso, King, and Root.

I.    Any drafts of the reports prepared by Drs. Caruso, King, and Root.

J.    Any requests to correct and/or revise the reports of Drs. Caruso, King, and Root.

K.    Aetna's relevant claim standards, including those regarding:

    i.    The California definition of disability;

    ii.    The meaning of "reasonable continuity" in the policy;

    iii.    Any policies and procedures Aetna has in place to assure all claimants in similarly situated cases are treated fairly and uniformly.

    iv.    The "LTD Claim Management P&P";

    v.    The "LTD Claim Documentation P&P";

    vi.    The "LTD Clinical Referral and Review P&P";

    vii.    The "LTD Test Change-Transition to 'Any Occupation' Investigations";

    viii.    The "Multi Disciplinary Review Panel P&P";

    ix.    The "Own Occupation Comparison";

    x.    The "Social Security Disability Income";

xi        The "Credentialing Overview";

xii.       The "Medical Director Credentialing Overview";

xiii.      The "ARCS Procedures";

xiv.      The "ARCS Peer Consultant Reference Manual";

xv.       The "Front End Peer Review Process Flow";

xvi.      The "Panel Peer Review Audit"template;

Versions of said documents in effect in 2013-2016, clearly were "relied upon," etc., in Punsky-

Pinard's claim and therefore should have been provided to Plaintiff upon request.

30.     This Court is required to review the termination of Plaintiff's benefits *de*

*novo* because the discretionary clause in The Policy is void and unenforceable due to California

Insurance Code section 10100.6 because The Policy:

A.       provides life insurance or disability insurance coverage,

B.       to California residents;

C.       was renewed–i.e., continued in force – after The Policy's anniversary date

on October 1, 2012;

D.       which was after the effective date of Insurance Code section 10110.6.

31.     If, for any reason, this Court determines that review is not *de novo*, then this

Court is required to review the termination of Plaintiff's LTD benefits with minimal deference to

Aetna's determination because:

A.       Aetna is both the administrator and the funding source for The Policy, and

therefore has a conflict of interest.

B.       Aetna failed to comply with ERISA's procedural requirements regarding

benefit claims procedures and full and fair review of benefit claim denials

as set forth in Paragraphs 27-29;

C.      Aetna utilized medical experts to review Plaintiff's medical records who
        had a financial conflict of interest, and therefore did not provide a neutral,
        independent review process.

D.      Aetna refused to consider all evidence presented by Plaintiff in the course
        of her appeal.

E.      Aetna's decision-making was influenced by its financial conflict of
        interest.

F.      Defendant relied upon factually unsubstantiated medical reviews that were
        provided by Aetna's hired physicians.

32.     Defendant's termination of Plaintiff's LTD  benefits was arbitrary and capricious,
an abuse of discretion, and a violation of the terms of The Policy.

33.     An actual controversy has arisen and now exists between Plaintiff and Defendant
with respect to whether Plaintiff is entitled to LTD benefits under The Policy.

34.     Plaintiff contends, and Defendant disputes, that Plaintiff is entitled to LTD
benefits under the terms of The Policy because Plaintiff contends, and Defendant disputes, that
Plaintiff is totally disabled.

35.     Plaintiff desires a judicial determination of her rights and a declaration as to
which party's contention is correct, together with a declaration that Defendant is obligated to pay
long-term disability benefits under the terms of The Policy, retroactive to the first day her
benefits were terminated, until and unless such time that Plaintiff is no longer eligible for such
benefits under the terms of The Policy.

36.     A judicial determination of these issues is necessary and appropriate at this time

COMPLAINT

under the circumstances described herein in order that the parties may ascertain their respective

rights and duties, avoid a multiplicity of actions between the parties and their privities, and

promote judicial efficiency.

37.     As a proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff

was required to obtain the services of counsel to obtain the benefits to which she is entitled under

the terms of The Policy.  Pursuant to 29 U.S.C. §1132(g)(1), Plaintiff requests an award of

attorney's fees and expenses as compensation for costs and legal fees incurred to pursue

Plaintiff's rights.

WHEREFORE, Plaintiff prays judgment as follows:

1.     For declaratory judgment against Defendant, requiring Defendant to pay

long-term disability benefits under the terms of The Policy to Plaintiff for the period to which

she is entitled to such benefits, with prejudgment interest on all unpaid benefits, until Plaintiff

attains the age of 67 years or until it is determined that Plaintiff is no longer eligible for benefits

under the terms of the Policy.

2.     For attorney's fees pursuant to statute against defendant.

3.     For costs of suit incurred.

4.     For such other and further relief as the Court deems just and proper.

BY:

__s/Francis G. Murphy_____          ____s/Robert J. Rosati_____
Francis G. Murphy                        ROBERT J. ROSATI
NH Attorney #: 1840                      CA Attorney ID# 112006
Shaheen & Gordan, P.A.                   6485 N. Palm Avenue, Suite 105
80 Merrimack Street                      Fresno, CA 93704
Tel: (603)617-3054                       Tel: (559) 478-4119
E-mail: fmurphy@shaheengordan.com        E-mail: robert@erisalg.com
                                         *Pro Hac Vice Application pending*

---

COMPLAINT

Attorneys for Plaintiff, Susan Punsky-Pinard

Dated: June 19, 2017

COMPLAINT